# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

|  |  |
|---|---|
| KNIGHT'S TOWING, INC.,<br><br>                Plaintiffs,<br><br>    v.<br><br>KP TRANSPORT LLC,<br>                Defendant. | **CV-24-01-H-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiffs Knight's Towing, Inc. ("Knight's") filed a complaint against KP Transport LLC (KP) on January 5, 2024, alleging negligence (Count 1) and negligence per se (Count 2). (Doc. 1 at 4.) Knight's seeks past and future economic damages, emotional and general damages, and costs and disbursements. (*Id*. at 5.) KP filed a motion for partial summary judgement on Knight's recovery of lost income and emotional distress damages. (Doc. 20.) The Court granted partial summary judgement to KP and precluded Knight's from recovering lost income or emotional distress damages on March 3, 2025. (Doc. 37.) KP filed a motion for partial summary judgement on Knight's speculative damages on July 25, 2025. (Doc. 40.) KP filed a motion in limine on August 1, 2025. (Doc. 45.) Knight's filed

1

a motion in limine on August 1, 2025. (Doc. 48.) The Court held a hearing on September 15, 2025. (Doc. 66.)

## FACTUAL BACKGROUND

The parties were involved in a motor vehicle accident north of Helena, Montana on January 5, 2022. (Doc. 1 at 3.) The accident involved a tow truck ("TR65") owned by Knight's and a freightliner ("semi") owned by KP. Both vehicles were driving northbound on Interstate 15. The KP owned semi moved into the passing lane and attempted to pass Knight's tow truck TR65. (Doc. 53 at 15.) Knight's tow truck TR65 went off the roadway and sustained damages. (*Id*.) The parties dispute the cause of the accident and the alleged damages. (*Id*.) Knight's employee Seth Harrison operated TR65 at the time of the accident. (*Id*.) Knight's owners, Joellen Barbagello and Joshua Barbagello, were not present at the accident. (Doc. 34 at 3.)

Knight's took TR65 for accident-related repairs on or around January 13, 2022. (Doc. 53 at 16.) A dispute exists between the parties about when repairs on TR65 were completed. Knight's did not pick up TR65 until March 22, 2022. (*Id*. at 17.) Knight's argues that 76 days elapsed from when the accident occurred to when TR65 was ready for pickup from the repair shop. (*Id*. at 16.) The parties dispute the condition of TR65 upon return to Knight's and the cause of the alleged ongoing problems with TR65. (*Id*. at 17.)

Knight's alleges future damages from the date of the accident on January 5, 2022, to one of two future scenario dates (June 15, 2023, or September 15, 2023). (Doc. 52 at 2.) Scenario one considers June 15, 2023, the end of Knight's alleged business interruption period when Knight's began leasing a new rollback. (Doc. 53 at 23.) Scenario two considers September 15, 2023, the end of Knight's alleged business interruption period when Knight's alleges it took approximately 3 months following the leasing of the new rollback for business to ramp back up to pre-incident levels. (Doc. 43 Ex. 15 at 4.) Knight's asserts no future damages beyond the two scenario dates (June 15, 2023, or September 15, 2023). (Doc. 52 at 2.)

## LEGAL STANDARD

### I.     Summary Judgement

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248. When determining whether there is a genuine dispute as to any material fact, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Id*. at 323.

3

II.    <u>Motions in Limine</u>

Motions in limine serve as procedural mechanisms "to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The decision on a motion in limine is committed to the district court's discretion, including the decision of whether to reserve ruling until trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Motions in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Lab., Inc.*, CV-07-170-BLG-RFC, 2010 U.S. Dist. LEXIS 113888, at *1 (D. Mont. Oct. 26, 2010).

A court will grant a motion in limine only if "the evidence is 'inadmissible on all potential grounds.'" *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016) (quoting *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *1). "[D]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n*, No. CV 19-6-BLG-TJC, 2021 U.S. Dist. LEXIS 98985 at *25 (D. Mont. May 25, 2021) (internal quotations omitted).

Evidentiary rulings must be deferred until trial if evidence fails to meet the "inadmissible on all potential grounds standard." *Quad City Testing Lab.*, 2010

4

U.S. Dist. LEXIS 113888 at *2. To defer rulings on motions in limine allows a court to place "questions of foundation, relevancy and potential prejudice . . . in proper context." *Id.* (internal quotations omitted). A court may alter its ruling on a motion in limine if trial brings to light facts that the court failed to anticipate in its earlier ruling. *Bensimon*, 172 F.3d at 1127.

## DISCUSSION

I.    <u>Motion for Partial Summary Judgement</u>

KP challenges Knight's alleged past and future economic damages related to business interruption, lost profits, or any other economic damages arising after the date that TR65 was repaired and released to Knight's ("date of return"). (Doc. 41 at 7.) KP claims the damages are causally unrelated to the accident, too speculative to support recovery under the law, and cannot be calculated within a degree of reasonable certainty. (*Id*. at 7-8.) Knight's alleges that the damages to TR65 arose directly from the accident as supported by Joshua Barbagello's testimony and are reasonably certain as explained by expert witness Steven Johnson, CPA. (Doc. 52.) Knight's also asserts it is not alleging future economic damages due to delayed growth or a delay in Knight's ability to initiate its business plan. (*Id*. at 2.) Knight's contends instead that all future loss calculations are limited to the specified time-period and are based on past business interruptions. (*Id*.)

Knight's must prove a genuine dispute exists as to a material fact to survive summary judgement. A party may establish a genuine dispute as to a material fact "by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56. A party may cite to information provided by both expert and lay witnesses, so long as the testimony would be admissible at trial. (*Id*.) KP first asserts that Knight's has failed to produce evidence of a genuine dispute because Knight's failed to disclose Joshua Barbagello as an expert witness pursuant to Rule 26(a)(2) and that Joshua Barbagello should be prevented from testifying as to causation. (Doc. 58 at 4.) KP then asserts that even if Joshua Barbagello's testimony is not considered an impermissible expert opinion, it is insufficient as lay witness testimony to raise a genuine dispute of material fact. (*Id*. at 5.) The Court disagrees.

Rule 701 permits a lay witness to provide opinion testimony limited to "opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [Testimony by Experts]." Fed. R. Evid. 701. "The admissibility of lay opinion testimony under Rule 701 is

committed to the sound discretion of the trial judge." *Nationwide Transp. Fin. v. Cass Info. Sys. Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008) (*quoting United States v. Yazzie,* 976 F.2d 1252, 1255 (9th Cir. 1992)).

Courts typically restrict lay opinion testimony to matters that fall within the personal knowledge of the witness, but "if by reason of opportunities for observation he is in a position to judge [] the facts more accurately than those who have not had such opportunities, his testimony will not be excluded on the ground that it is a mere expression of opinion." *State v. Friend*, 164 N.C. App. 430 (2004). Courts admit this form of opinion testimony not based on experience, training, or specialized knowledge within the realm of an expert, but rather due to the particularized knowledge of the witness based on their position in the industry or business.

In *Lightning Lube, Inc. v. Witco Corp*., the Third Circuit concluded that the district court had not abused its discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages when it was based on his knowledge and participation in the day-to-day affairs of the business. *Lightning Lube, Inc. v. Witco Corp*. 4 F.3d 1153 (3d Cir. 1993). In *United States v. Westbrook*, the Eighth Circuit held that it was proper to allow two witnesses who were heavy methamphetamine users to testify that a substance was methamphetamine, but it was error to allow another witness without such particularized knowledge to make the identification. *See, e.g., United States v. Westbrook*, 896 F.2d 330 (8th Cir. 1990).

Joshua Barbagello possesses particularized knowledge as an owner of Knight's Towing, Inc. and can testify as to his personal knowledge and his opinions based on what he perceived. Whether the trier of fact finds this testimony compelling presents another question. The Court will not prohibit Joshua Barbagello from testifying as to his opinions on causation of Knight's damages. The Court cannot make factual findings or credibility determinations or otherwise weigh evidence relevant to dispute facts at the summary judgement stage. *Anderson, Inc.*, 477 U.S. at 255.

The assertions by the parties as to the material fact of causation are as follows: First, KP alleges that Knight's future damages claims beyond the date of return are not causally related to the accident because any ongoing problems that TR65 experienced were not caused by the accident. (*Id*. at 17.) It stands undisputed that TR65 had mechanical and electrical problems before the accident and that Knight's had taken TR65 into the repair shop on numerous occasions before January 5, 2023. (*Id*.)

Knight's took TR65 into the repair shop on August 30, 2021, when it was diagnosed with several problems. (Doc. 53 at 9-11.) The repair shop recommended a replacement of the electrical harness. (*Id*. at 11.) Supply chain issues required that the electrical harness simply be repaired rather than be replaced. (*Id*.) The repair shop completed these repairs among other work on October 4, 2021. (*Id*. at 12.)

TR65 passed a Montana Department of Transportation Vehicle Examination Inspection on December 22, 2021. (*Id*. at 11.) Knight's experienced no other problems with TR65 following these repairs and the truck operated maintenance free until the accident in January of 2022. (Doc. 52 at 6.)

TR65 continued to have mechanical issues following the return from the shop on March 22, 2022. (Doc. 53 at 17-19.) First, in April, TR65 had a problem with the exhaust brake which had been operational before the crash. (Doc. 52 at 7.) Knight's had to take TR65 to another repair shop four separate times to address mechanical issues including electrical problems, stalling, oil pressure, and tracking issues. (*Id*. at 8.) The second repair shop informed Knight's that these problems related to the electrical system and wiring harness. (*Id*.) KP cites these facts as evidence that the mechanical issues with TR65 predated the January accident and that any ongoing issues following the March return date cannot be attributed to the accident. Knight's cites this information in Joshua Barbagello's affidavit and prior deposition testimony as evidence to substantiate Joshua Barbagello's opinion that the January accident caused the ongoing problems with TR65. These allegations provide potentially admissible evidence sufficient to demonstrate the existence of a genuine dispute as to the material fact of causation.

KP alleges that even if the Court permits Joshua Barbagello to testify as to causation, Knight's claims for future damages still prove too speculative and cannot be determined to a reasonable degree of certainty. (Doc. 41 at 7.) KP asserts that

Knight's damages expert, Steven Johnson, should be excluded from providing testimony that opines on the cause of the alleged damages. (Doc. 58 at 9-10.) Knight's retained its expert, Steven Johnson, a CPA, to "calculate lost operating profits from the date of the incident until the [] TR65 was replaced and operations returned to pre-incident levels." (Doc. 43 Ex. 15 at 4.) In short, KP asserts that Johnson, as a CPA and not a mechanic or someone with specialized technical knowledge, should not be permitted to opine on what caused the accident or the ongoing problems with TR65. The Court does not disagree, but Johnson's testimony does not purport to opine on causation. Johnson intends to use the assumptions provided to him by the Barbagellos, namely that the January accident caused the loss of TR65, and use his expertise to provide the jury with calculated losses for the specified period. KP can raise an objection at trial if Johnson begins to stray beyond his expertise and attempts to provide technical opinions on what caused TR65's extended mechanical problems. KP's motion for partial summary judgement on speculative damages is denied. KP may raise appropriate objections at trial.

II.    <u>Motions in Limine</u>

a.   <u>KP's Motions in Limine</u>

    i.  <u>#1: Exclusion of Steven Johnson</u>

KP asserts that any testimony from Knight's damages expert, Steven Johnson, should be excluded under FRE 702 and 703. (Doc. 46 at 3-4.) KP concedes that Johnson qualifies as an expert but argues that Johnson's testimony should be excluded because it is neither reliable nor relevant. (*Id*. at 4-5.) KP argues Johnson's proffered testimony proves unreliable under Rule 702 because it is based on incorrect and speculative assumptions. (*Id*. at 6.) These assumptions included the sources of revenue from tow sales, whether Knight's tow sales would have grown at the wage rate, and whether the accident rendered TR65 permanently unusable. (*Id*.) KP argues Johnson's testimony is also irrelevant under Rule 702 because he calculates lost profits for two time periods (January 5, 2022, to June 15, 2023, or September 15, 2023) based on the assumption that TR65 was unusable after the accident return date in February or March. (*Id*. at 7-9.) KP alleges that assumption is incorrect. (*Id*.) KP claims that the incorrectness of Johnson's assumption about the condition of TR65 at that time renders irrelevant his testimony on damages. (*Id*.)

Lastly, KP asserts that Johnson's testimony likely would confuse or mislead the jury because he assumes causation—that the accident caused TR65 to be permanently unusable—and should be excluded under FRE Rule 403. (*Id*. at 8.) KP alleges that if Johnson were to testify about his calculations on damages, it would confuse the jury as to whether he can attribute a specific dollar amount to KP's

alleged wrong or whether he was merely working under assumptions provided to him. (*Id*.) The Court disagrees.

Johnson's testimony provides a breakdown of his methods and analysis. (Doc. 43 Ex. 15 at 3-6.) An expert may rely on basic assumptions provided by a party when formulating his opinions. Fed. R. Evid. 702, advisory committee notes to 2000 amendments ("The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence.") *Sheeler v. Eldridge*, No. 4:22-CV-00313-AKB, 2024 WL 2959193, at *6 (D. Idaho June 12, 2024), *appeal dismissed*, No. 24-3986, 2024 WL 5277212 (9th Cir. Oct. 21, 2024). "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702, advisory committee notes to 2000 amendments.

Johnson's affidavit demonstrates that he is not opining on causation. Johnson merely uses the version of the disputed facts provided to him by the Barbagellos and applies his methods and analysis to those disputed facts. (Doc. 43 Ex. 15 at 4; Doc. 54 Ex. 5 at 4.) KP can raise an objection at trial or address further concerns through cross-examination if Johnson does begin to stray beyond his expertise and attempts

to provide technical opinions on what caused TR65's extended mechanical problems.

  ii. <u>#2: Evidence and testimony outside of an expert's claimed area of expertise or proffered opinion</u>

  KP asserts that the parties' designated experts should be precluded from offering testimony or opinions for which they are not qualified to offer, pursuant to FRE 702, and should further be precluded from offering testimony or opinions outside the scope of their Rule 26(a)(2) disclosure and respective reports. (Doc. 46 at 9.) Knight's does not object to this motion to the extent that no conflict exists with their response to KP's motion for partial summary judgement concerning Joshua Barbagello's testimony on causation. (Doc. 56 at 4.) The Court grants KP's motion in limine to exclude evidence and testimony outside an expert's claimed area of expertise or proffered opinion. The Court concluded above that the testimony provided in Johnson's affidavits do not fall into this category.

  iii. <u>#3: Expert testimony from nondisclosed expert</u>

  KP requests that the Court exclude expert testimony from any witnesses not disclosed pursuant to FRE Rule 26(a)(2). (Doc. 46 at 10.) Knight's does not object to the extent no conflict exists between their response to KP's motion for partial summary judgement concerning Joshua Barbagello's lay witness testimony on causation. (Doc. 56 at 5.) The Court grants KP's motion in limine to preclude expert

testimony from nondisclosed experts. The Court concluded above that the testimony provided in Joshua Barbagello's affidavits does not fall into this category.

### iv. #4: Argument appealing to juror's self-interest

KP requests that the Court issue an order preventing any appeal to the jury based on sympathy because it is unfairly prejudicial under Rule 403. (Doc. 46 at 10.) KP further seeks to prevent Knight's from invoking the "golden rule" or using any "reptile theory" evidence or argument at trial. (*Id*. at 11.) KP asserts this preclusion should include any reference to Knight's Towing Inc. as a mother-son business or any emotional distress the pair faced following the accident. (Doc. 59 at 6-7.)

The golden rule refers to arguments that ask the jury to imagine themselves as the plaintiff and grant the relief they would desire in that position. 75A Am. Jur. 2d Trial § 540. "Reptile Theory" is a strategy in which plaintiffs argue that the jurors in this case may have the power to improve their own safety, that of their family and friends, or the community by rendering a verdict against the defendant that might remedy allegedly dangerous conduct or conditions. KP argues that this approach will incite jurors "primal instincts" and prompt jurors to enter a 'reptilian' survival mode, which has the effect of overpowering rationality or other executive cognitive functions when an individual perceives that their safety is at risk. *See* David Ball & Don Keenan, Reptile: The 2009 Manual of the Plaintiff's Revolution (1st ed. 2009). (Doc. 46 at 11.)

14

Knight's responds that it would be impossible for them to present their case without introducing the fact that they are a small business owned by a mother and her son. (Doc. 56 at 5.) Knight's further alleges that it would be impossible for them to not present emotional testimony when discussing the duty of Plaintiffs to mitigate damages. (*Id.*) Knight's assures the Court that it "will not intentionally present evidence that would normally be presented in a trial where emotional damages are sought," as the Court issued an order precluding such recovery. (*Id.*)

The Court denies KP's motions in limine as to the golden rule argument and the reptile theory argument. The Court will instruct the jury not to make a decision based upon sympathy, passion or prejudice, particularly as it relates to potential damages. The Court will not categorically prohibit a trial strategy, but the Court reminds Knight's that emotional distress damages are not recoverable in this matter and testimony at trial should reflect that order. The Court advises Knight's that testimony at trial that tends to emphasize improperly the small, mother-son business or the difficulty of operating the company during the relevant period remains subject to objection by KP. The parties remain free to raise appropriate objections at trial.

v. <u>#5: Reference to incidental or consequential litigation damages</u>

KP asks the Court to prevent Plaintiff from inferring or suggesting that it has been damaged or inconvenienced by the litigation process, such as time and expenses for depositions and trial, or obligation of attorney fees. (Doc. 46 at 11.)

Knight's does not object. (Doc. 56 at 6.) The Court grants KP's motion in limine to preclude Plaintiff from referencing incidental or consequential litigation damages.

> vi. <u>#6: Testimony or evidence regarding claims handling or the adjustment of Knight's Towing Inc.'s claim</u>

The Court will address this motion in limine (#6) with KP's motion in limine #10 requesting exclusion of any reference to insurance. KP requests the Court preclude Knight's from introducing testimony or evidence regarding claims handling under Rule 403 because such evidence will be confusing and misleading and is irrelevant as it is not a claim asserted in these proceedings. (Doc. 46 at 12.) KP further requests any reference to insurance be inadmissible at trial. (*Id*. at 16.)

Knight's asserts that discussion of insurance would not be introduced to prove negligence or liability and is otherwise admissible because it is relevant. (Doc. 56 at 7-8.) Knight's also argues that evidence of insurance would be admissible to show bias or prejudice and discussion of claims handling should be admissible in this matter to address the following issues: (1) the credibility of Justin Tucker in general; (2) the credibility of Tucker's offer to resolve the property damage claim without insurance; (3) the failure of Defendant to effectuate prompt repairs to the Plaintiff's wreckers, thus explaining to the jury why Knight's did not take action sooner to notify its insurance company or attempt to purchase another rollback; and (4) damages. (*Id*. at 15-16.)

"Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411. Rule 411 allows the Court to admit evidence of insurance "for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411.

The Court grants KP's motion in limine #6 to exclude any testimony or evidence regarding claims handling and grants KP's motion in limine #10 to exclude any reference to insurance. Reference to insurance or claims handling is not relevant to this proceeding. Knight's is not making a bad faith insurance claim in which discussion of insurance and claims handling would be relevant. Knight's asserts that Defendant's conduct with respect to claims handling and insurance is relevant to justify to the jury why Knight's did not take mitigation actions sooner. Knight's may tell the jury that it was negotiating with Tucker and KP to explain its delay in notifying its insurance company or purchasing another rollback. Knight's does not need to provide the extensive discussion included in its briefing to explain its actions to the jury. Discussion of insurance and claims handling is not relevant to the issue in this matter and would be prejudicial and confusing to a jury, pursuant to Rule 403. The Court will reserve ruling over the issue of insurance as it pertains to damages and payments to let the parties discuss the matter at the final pretrial conference.

vii.   #7: Discussion regarding personal damages

17

KP requests the Court preclude discussion about Joshua Barbagello's or Joellen Barbagello's personal damages, including but not limited to alleged lost income or emotional distress as this issue was already decided by the Court. (Doc. 46 at 13.) Knight's does not object. (Doc. 56 at 7.) The Court grants KP's motion in limine to preclude discussion about Joshua Barbagello's or Joellen Barbagello's personal damages, including but not limited to alleged lost income or emotional distress.

viii.   #8: Exclusion of discussion of prior settlements and mediation discussions

KP requests exclusion of discussion of prior settlements and mediation discussions, pursuant to FRE Rule 408, including those between KP and Knight's driver, Seth Harrison. (Doc. 46 at 13.) Knight's does not object. (Doc. 56 at 7.) The Court grants KP's motion in limine excluding discussion of prior settlements and mediation discussions, pursuant to Rule 408.

ix.   #9: Admission of RJ Green's reports or testimony for purposes outside of his direct personal knowledge

KP requests the Court prohibit Knight's from either offering testimony from RJ Green, a third-party adjustor for the Montana Claims Service, or referencing his reports for purposes outside his direct personal knowledge, including but not limited to any alleged settlement or settlement discussion between Joshua Barbagello and Justin Tucker. (Doc. 46 at 14.) Green completed an inspection of the claimant

18

vehicle, touched base with both parties, got to an account of the loss, and then started obtaining estimates by the repairer. (*Id*. citing 2nd Found. Decl. Michael D. Bybee ¶ 1, Aug. 1, 2025). KP specifically objects to the use of Green's testimony or his report to offer evidence on causation or settlement, and any other issues outside his personal knowledge. (*Id*. at 15.) Knight's does not object to exclusion of any testimony from Green that is outside his personal knowledge but states that it appears KP's argument may extend into excluding testimony that is within Green's personal knowledge. (Doc. 56 at 7.)

The Court grants KP's motion in limine to exclude Knight's from either offering testimony from RJ Green or referencing his report on matters that fall outside his direct personal knowledge. The Court reserves ruling until trial whether any particular issues fall beyond Green's personal knowledge. The parties remain free to raise any appropriate objections at trial.

x.   <u>#10: Exclude any reference to insurance</u>

The Court addressed this motion in limine above in concert with KP's motion in limine #6. The Court will deny this motion in limine.

xi.   <u>#11: Discussion or comments about pretrial motions</u>

KP requests the court exclude any discussion about pretrial or bench motions that were filed in these proceedings. (Doc. 46 at 17.) KP asserts any such references would be irrelevant and prejudicial under Rules 401, 402, and 403. (*Id*.) Knight's

does not object. (Doc. 56 at 16.) The Court grants KP's motion in limine to exclude any discussion of pretrial or bench motions that were filed in these proceedings.

xii.  <u>#12: Exclusion of non-party witnesses before their testimony</u>

KP requests the Court exclude non-party witnesses from the courtroom before their testimony, pursuant to FRE Rule 615(a). (Doc. 46 at 17.) Knight's does not object. (Doc. 56 at 16.) The Court grants KP's motion in limine to exclude non-party witnesses from the courtroom prior to their testimony, pursuant to FRE Rule 615(a).

b.  <u>Knight's Motions in Limine</u>

i.  <u>#1: Justin Tucker, KP's Manager, deposition testimony about fault</u>

Knight's asserts that Justin Tucker, KP's Manager, should be precluded from testifying at trial about who was at fault for the accident, pursuant to Rules 403, 602, 701, and 702. (Doc. 49 at 2.) Tucker testified in his deposition that he determined KP's driver was not at fault based on KP's driver's statements to him. (*Id.*) Knight's states that Tucker was not present during the accident and was never at the crash scene. (*Id.*) Knight's further asserts that Tucker has no training in accident reconstruction. (*Id.*) KP responds that Tucker, as KP's Manager, should be able to deny liability at trial based on him believing his driver's account of the accident. (Doc. 50 at 4-5.) KP asserts that Tucker's deposition testimony that he believes his employee's account of the accident should not be inadmissible under the Federal Rules of Evidence. (*Id.*)

The Court grants Knight's motion in limine to exclude testimony from Tucker on testifying as to who was at fault for the accident. The testimony of a lay witness must be (a) rationally based on his perception, (b) helpful to a clear understanding of his testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. Tucker cannot testify as to his beliefs based on what he learned from hearsay statements from KP's driver. Tucker's opinions on fault are not rationally based on Tucker's personal perception as he was not present at the accident.

   ii. <u>#2: Justin Tucker, KP's Manager, deposition testimony about facts of the crash</u>

Knight's asks the Court to prevent Tucker from testifying as to the facts of the crash because he was not present, does not know what happened in the crash, and is not a crash reconstructionist. (Doc. 49 at 2.) KP asserts that Tucker stated clearly in his deposition that he was not present at the crash and it would be speculation for him to opine on what happened at the crash. (Doc. 50 at 5.) KP asserts that Tucker must discuss KP's liability at trial which inherently discusses the "facts of the crash" and thus a blanket prohibition on such testimony would be inappropriate. (*Id*.) The Court disagrees with KP. The Court grants Knight's motion in limine to exclude Tucker's testimony discussing the facts of the crash. Tucker may discuss KP's liability at trial without discussing the facts of the crash to which Tucker has no

personal knowledge as he was not present at the crash. Tucker's testimony must not exceed his personal knowledge pursuant to Rule 701.

   iii. <u>#3: Justin Tucker, KP's Manager, deposition testimony about hearsay testimony</u>

Knight's requests the Court exclude testimony from Tucker about what was said to him by persons at Harlow's Truck Center about the repairs done to TR65 and Knight's payment for the repairs, pursuant to Rules 403, 602, and 802. (Doc. 49 at 3.) KP asserts an exclusion of this testimony would be overbroad. (Doc. 50 at 6.) KP further asserts that even if portions of the testimony were hearsay, they would admissible under Rule 801 as an exception to hearsay if it is offered to show the effect on Tucker and explain KP's actions, and not to prove the truth of the matter asserted. (*Id*. citing Fed. R. Evid. 801(c).) The Court cautions the parties that it will not allow testimony based on hearsay at trial. The Court will reserve ruling until trial on this motion in limine and specifically whether the alleged testimony is hearsay until trial.

   iv. <u>#4: Justin Tucker, KP's Manager, deposition testimony about conversation between the Barbagellos and KP's mechanic</u>

Knight's seeks to exclude testimony from Tucker concerning a conversation Tucker had with the Barbagellos and KP's mechanic following the mechanic's inspection of TR65 in Helena after the crash. (Doc. 49 at 3.) KP responds that Tucker's testimony on the matter would not be inadmissible on all potential grounds

and should not be wholly prohibited. (Doc. 50 at 7.) KP states for example that, the testimony that Knight's seeks to exclude as hearsay could be admissible if is offered to show the effect on Tucker and explain KP's actions, and not to prove the truth of the matter. (*Id*. at 6.) The Court issues the same caution regarding hearsay testimony. The Court will reserve ruling until trial on this motion in limine and specifically whether the alleged testimony is hearsay until trial.

### v.  #5: The driving record of Knight's driver

Knight's requests the Court prevent KP from introducing evidence related to the driving record of Knight's driver, Seth Harrison, including traffic tickets and car crashes, pursuant to Rule 404 and 403. (Doc. 49 at 3.) Knight's asserts that Harrison's driving record should be excluded because it is unrelated to the subject crash and the risk of prejudice would be high. (*Id*.) KP does not oppose a narrowly tailored motion in limine preventing Harrison's driving record from being used for purposes of establishing liability for the January 5, 2022, accident. (Doc. 50 at 9.) KP objects to a blanket prohibition on introduction of Harrison's driving record based on the argument that it would be relevant to Knight's future damages claims and whether Knight's actually would have been able to realize their business expansion plan. (*Id*. at 8-9.)

KP asserts in its sur-response that recently produced discovery from Knight's demonstrates that "Knight's expended funds on at least one of Mr. Harrison's two

vehicle accidents that occurred after the Accident" and during the period when Knight's expert, Steven Johnson, "intends to testify that all of Knight's lost profits are attributable solely to KP." (Doc. 69 at 2-3.) KP asserts that Knight's expert, Johnson, based the assumptions in his calculations at least partially on Knight's business plan. (Id. at 7.) KP alleges the evidence of Harrison's driving record and Knight's knowledge of his past accidents proves that Knight's failed to adhere to its business plan which is relevant to KP's affirmative defenses. (Id. at 7.)

The Court does not compelling find KP's argument that Harrison's driving record would be important to the issue of whether Knight's could realize their business expansion plan. The jury will weigh the evidence and make credibility determinations concerning whether Knight's could have realized their business expansion plan. Any evidence about Harrison's past driving record would be highly prejudicial, even in a limited context. Harrison's past driving record would not be relevant to the issue of liability in the subject crash. The Court does not see at this time the relevance of Harrison's past driving record to the potential realization of Knight's business plan. The Court will defer ruling until trial on Knight's motion in limine to preclude KP from introducing evidence of Harrison's driving record as it relates to the potential realization of Knight's business plan.

## ORDER

Accordingly, **IT IS ORDERED:**

1. KP's motion for partial summary judgement on Knight's Towing, Inc.'s Speculative Damages is **DENIED**.

2. KP's motion in limine to exclude testimony of Steven Johnson is **DENIED**.

3. KP's motion in limine to preclude evidence and testimony outside of an expert's claimed area of expertise or proffered opinion is **GRANTED**.

4. KP's motion in limine to preclude expert testimony from nondisclosed expert is **GRANTED**.

5. KP's motion to preclude argument appealing to jurors' self-interest in **DENIED**.

6. KP's motion in limine to preclude reference to incidental or consequential litigation damages is **GRANTED**.

7. KP's motion in limine to preclude testimony or evidence regarding claims handling or the adjustment of Knight's Towing, Inc.'s claim is **GRANTED**.

8. KP's motion in limine to preclude discussion regarding personal damages is **GRANTED**.

9. KP's motion in limine to exclude discussion of prior settlements and mediation discussions is **GRANTED**.

10. KP's motion in limine to preclude admission of RJ Green's reports or testimony for purposes outside of his direct personal knowledge is **GRANTED**.

11. KP's motion in limine to exclude any reference to insurance is **GRANTED**.

12. KP's motion in limine to preclude discussion or comments about pretrial motions is **GRANTED**.

13. KP's motion in limine to exclude non-party witnesses prior to their testimony is **GRANTED**.

14. Knight's motion in limine to preclude testimony from Justin Tucker about who was at fault for the accident is **GRANTED**.

15. Knight's motion in limine to preclude testimony from Justin Tucker about facts of the crash is **GRANTED**.

16. The Court reserves ruling on Knight's motion in limine to preclude testimony from Justin Tucker about his conversations with persons at Harlow's Truck Center.

17. The Court reserves ruling on Knight's motion in limine to preclude testimony from Justin Tucker about the conversation between Plaintiffs and KP's mechanic.

18. Knight's motion in limine to exclude the driving record of Seth Harrison, Knight's driver, is **GRANTED** with respect to the cause of the accident. The Court reserves until trial ruling whether Harrison's past driving record would be relevant to the potential realization of Knight's business plan.

DATED this 29th day of September, 2025.

_____
Brian Morris, Chief District Judge
United States District Court